[Crim. No. 367.   Third Appellate District.—January 22, 1917.]

THE PEOPLE, Respondent, v. JOSEPH M. PERRY, Appellant.

CRIMINAL LAW — MURDER — JUDGMENT — SUFFICIENCY OF EVIDENCE.—
Upon this appeal from a judgment of conviction under an informa-
tion charging the appellant with the crime of murder, it is held
that the evidence was sufficient to justify the verdict, and that no
errors were committed in the course of the trial.

APPEAL from a judgment of the Superior Court of
Plumas County.   J. O. Moncur, Judge.

The facts are stated in the opinion of the court.

L. N. Peter, and S. C. Young, for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy
Attorney-General, for Respondent.

CHIPMAN, P. J.—Defendant was informed against for the
crime of murder and was found guilty by the jury and was
sentenced by the court to imprisonment in the state peniten-
tiary for the period of his natural life.   He appeals from the
judgment of conviction.   The transcript was filed July 26,
1916.   Defendant's attorneys have filed no brief or points and
authorities.   The case was placed upon the January calendar
and, there being no appearance for defendant, on motion of
the attorney-general the case was submitted on the record.
We have examined the evidence and are satisfied that it was
sufficient to justify the verdict.

The homicide occurred at the Feather River Inn, Plumas
County, on the night of May 8, 1916.   Deceased, James Har-
rigan, was occupying a tent about fifty feet from another tent
occupied by witness Rorabaugh.   Witness Rorabaugh testified
that during the night of May 8th, at about 1:20 A. M., he was
awakened by loud talking and quarreling going on at Harri-
gan's tent; that he recognized the voice of the man other than
Harrigan's as that of defendant, Perry.   He was asked what
was said and what they were quarreling about.   "A. Well,
they started in—I heard Harrigan say, 'Get away from here

you old —— —— ——,' and the other party says, 'Well, I will stay here as long as I want to,' and Harrigan says, 'Get away, get away from here—get the hell out of here.' In that manner—and the quarreling went along just so and this man left, says, 'I will go get my gun and I will fix you.' Q. Who was that man? A. Joseph Perry. . . . Q. And how were you able to observe the man leaving there? A. Looking out from under my tent—the side of it next to Harrigan's tent. Q. After Perry left there did he return? A. Yes, sir, in the neighborhood of five minutes. Q. Upon his return please state to the jury what took place. A. Well, he came up and says, 'Well, I am back again.' And Harrigan again told him, he says, 'Get away from here.' He says 'Get away, G—— d—— you, get away.' And the quarreling went on as I have used the language at first, and they quarreled there for about perhaps a minute or a minute and a half, then I heard the gun fired—I heard the gun shot—I also seen it—I also seen the fire.'' He testified that Perry had a lighted lantern on his left arm and ''the gun in two hands'' (showing); the tent was closed, Harrigan on the inside and Perry on the outside, ''about two feet—about two foot in front of the tent—from the tent.'' It appeared that a bullet hole was found ''right close to the flap—the opening of the tent,'' and Harrigan was found ''lying there dead.'' Witness Margon occupied a tent about two hundred feet from Harrigan's, and between Harrigan's and Perry's. Margon testified that defendant came to his tent during the night of June 8th and awoke him. He testified: ''Well, he came there and call me four or five times, 'Margon, Margon.' I said, 'What you want?' 'Open the tent,' he said, 'I want to come in.' 'No,' I said, 'Joe, better go home, I want to sleep, it is too late now.' Well, he said, 'I want to tell you,' he said, 'I have trouble with one man up there,' he said, 'I want to fix him.' I said, 'Go on home,' I said, 'go home.' 'Well, I go home,' he says, 'and get my gun and come up and fix him.' Q. He said, 'I go home and get my gun and fix him?' A. Yes, sir, four or five minutes I see the light go by there and hear the shot. Q. How long was it you say between the time you saw the light go by and you heard the shot? A. One and one-half minutes.'' Witness Martini was sleeping in Margon's tent at the time and was awakened by Perry's call to Margon. He testified to facts about the same as given by Margon.

There were other facts and circumstances shown tending to corroborate the testimony of Rorabaugh and make it reasonably certain that defendant killed the deceased.

When the sentence was imposed the court made the following statement: "The Court: On the tenth day of May, 1916, an information was filed in this court against you by the district attorney, charging you with the crime of murder, alleged to have been committed on the eighth day of May, 1916, in the county of Plumas, state of California, by then and there willfully, unlawfully, feloniously and with malice aforethought killing and murdering one James Harrigan, a human being; on this information you were arraigned and plead not guilty, and having no means to employ counsel, the court appointed two attorneys of this court to defend you. These attorneys did everything that is possible for an attorney to do for a client, and took care of your interests, the court believes, as well and as conscientiously as they would, had you been paying them a handsome compensation. The court will now ask if you have any legal reason to urge why the judgment of the court should not be pronounced upon you. (No answer.) The Court: It appearing none, the judgment of this court is that you be imprisoned in the state's prison at San Quentin for the term of your natural life. The evidence presented shows this crime to have been one which may well be classed as that of murder of the first degree. The jury after hearing the evidence determined that you were the person who committed the crime, and viewing the matter in that light, the court, in its judgment, has imposed upon you the life sentence."

The jury appears to have been fully and correctly instructed as to the law, and we discover no prejudicial rulings made in the course of the trial.

The judgment is affirmed.

Hart, J., and Burnett, J., concurred.